U.S. DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

MAR 06 2026

FILED

CSRA PROBATION SERVICES, INC.,    *
                                  *

    Plaintiff,    *

        v.    *    CV 125-003

                                    *

ERTC EXPRESS, LLC, HARVEY    *
FISHER, EA, and JOHN/JANE DOES,    *

    Defendants.    *

---

**O R D E R**

---

Before the Court are Defendant ERTC Express, LLC's ("ERTC") first motion to dismiss (Doc. 5), ERTC's motion to compel arbitration and stay proceedings (Doc. 6), ERTC's partial motion to dismiss (Doc. 29), Defendant Harvey Fisher's motion to dismiss (Doc. 34), and both Defendants' motion to compel arbitration and stay (Doc. 33.) For the following reasons, ERTC's first motion to dismiss (Doc. 5) and motion to compel arbitration and stay (Doc. 6) are **DENIED AS MOOT**[1], and both Defendants' motion to compel arbitration and stay (Doc. 33) is **GRANTED**. ERTC's motion to dismiss (Doc. 29) and Fisher's motion to dismiss (Doc. 34) are held in abeyance pending arbitration.

---

[1] Plaintiff filed an amended complaint (Doc. 16) on February 5, 2025, after ERTC filed its first motion to dismiss and motion to compel arbitration. (Docs. 5, 6.) Given the amended complaint is the operative complaint, both of ERTC's motions filed prior to February 5, 2025, are **DENIED AS MOOT**.

## I. BACKGROUND

Plaintiff CSRA Probation Services, Inc. ("CSRA") filed suit against ERTC and John/Jane Does in the Superior Court of Columbia County, Georgia on December 9, 2024. (Doc. 1-1, at 3.) This action was removed by ERTC on January 7, 2025. (Doc. 1, at 1.) Plaintiff filed an amended complaint and added Fisher as a Defendant on February 5, 2025. (Doc. 16.)

Plaintiff is a probation services business based in Evans, Georgia. (Id. at 6.) ERTC provides tax consulting services regarding Employee Retention Credit ("ERC") applications for small businesses affected by the COVID-19 pandemic. (Id. at 3-4.) Plaintiff states the action "arises out of [Plaintiff's] retention of Defendants to prepare and file Plaintiff's application for the Employee Retention Tax Credit . . . to the Internal Revenue Service ["IRS"] and provide professional accounting and tax advice in connection with the application." (Id. at 1.) ERTC contracted with Plaintiff to calculate the amount of tax credits Plaintiff was eligible for and to help Plaintiff apply for the credit. (Id.) In exchange, Plaintiff paid ERTC a contingency "consulting fee" based on a percentage of the refund amount (30%) that Plaintiff received from the IRS. (Id.) Plaintiff alleges ERTC and its employees or agents, including Fisher, miscalculated the credit amount Plaintiff was eligible to receive, which required Plaintiff to return a portion of the funds back to the IRS. (Id. at 2.)

2

Thus, Plaintiff alleges Defendants have wrongfully withheld their "consulting fee" for the portion of miscalculated credit and refuse to reimburse Plaintiff for the amount it overpaid to Defendants. (Id.)

Plaintiff alleges Defendants went against IRS regulations and guidance in effect at the time of the calculation and misrepresented to Plaintiff that it qualified to claim wages for credit calculation purposes for the entire third quarter of 2021 ("Q3 2021"). (Id. at 11.) The portion of the 30% contingency fee that was attributable to the Q3 2021 credit totaled $137,165.11. (Id.) Once Plaintiff discovered the alleged discrepancy in eligibility for Q3 2021, it participated in the IRS's Voluntary Disclosure Program, where businesses that received an overpayment of ERC could return the funds proactively to avoid potential penalties, interest, and prosecution for the covered tax periods. (Id. at 12.) ERTC overclaimed $468,352.93 in tax credit on Plaintiff's behalf for Q3 2021, so Plaintiff made a formal demand on ERTC to reimburse the relevant portion of the "consulting fee," $137,165.11, and Defendants refused. (Id. at 13; Doc. 18, at 11.) The Parties' agreement contained an arbitration clause in the event of "[a]ny dispute, controversy, or claim arising out of or related to this Agreement or any breach or termination of this Agreement." (Doc. 16-2, at 8.)

3

Plaintiff brings claims for: "(1) breach of contract, (2) professional negligence, (3) negligent misrepresentation, (4) intentional and fraudulent misrepresentation, (5) breach of fiduciary duty, (6) unjust enrichment, (7) conversion, (8) punitive damages, and (9) attorney's fees and costs of litigation against Defendants, individually and based on vicarious liability." (Doc 16, at 2.)  Plaintiff seeks relief including special damages not less than $137,165.11, out-of-pocket costs and other consequential damages to be determined, pre-judgment interest, general damages to be determined, punitive damages to punish and deter Defendants, reasonable attorney's fees and costs, and other relief the Court deems proper.  (Id. at 22.)

## A. Procedural History

On January 8, 2025, ERTC filed its first motion to dismiss and a motion to compel arbitration and stay proceedings.  (Docs. 5, 6.)  Plaintiff filed its amended complaint on February 5, 2025.  (Doc. 16.)  Then, ERTC filed its second partial motion to dismiss on February 28, 2025 (Doc. 29), and on March 17, 2025, ERTC and Fisher filed a motion to compel arbitration and stay (Doc. 33).  Fisher subsequently filed a motion to dismiss on March 18, 2025.  (Doc. 34.)  The issues have been thoroughly briefed, and the motions are ripe for the Court's review.

4

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") "embodies a liberal federal policy favoring arbitration agreements." Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1367 (11th Cir. 2005) (internal quotations and citations omitted). The FAA requires courts to "rigorously enforce agreements to arbitrate." Davis v. Prudential Sec., Inc., 59 F.3d 1186, 1192 (11th Cir. 1995) (quoting Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987)). The Supreme Court has "made clear that the strong federal preference for arbitration of disputes expressed by Congress in the [FAA] must be enforced where possible." Musnick v. King Motor Co. of Fort Lauderdale, 325 F.3d 1255, 1258 (11th Cir. 2003). Further, the Supreme Court found "the FAA applies to all arbitration agreements involving interstate commerce." Id. at 1258 n.2 (citing Cir. City Stores, Inc. v. Adams, 532 U.S. 105 (2001)).

"[T]he party seeking to compel arbitration has the initial burden of producing the arbitration agreement and establishing the contractual relationship necessary to implicate the FAA and its provisions granting [the court] authority to dismiss or stay [p]laintiff's cause of action and to compel arbitration." Compere v. Nusret Miami, LLC, 396 F. Supp. 3d 1194, 1199 (S.D. Fla. 2019) (citation and internal quotation marks omitted). If the party for arbitration meets its burden of production, the burden shifts to

5

the party opposing arbitration to show why the court should not compel arbitration. Bhim v. Rent-A-Ctr., Inc., 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009).

## III. DISCUSSION

The Court has subject matter jurisdiction over this dispute through diversity jurisdiction.[2] 28 U.S.C. § 1332. The amount in controversy is greater than $75,000.00 and the Parties are completely diverse. (Doc. 1, at 2.)

Defendants have moved for arbitration, arguing the current dispute falls within the scope of the arbitration provision in the Parties' contract. (Doc. 6, at 3; Doc. 33, at 3.) Plaintiff opposes the motions, arguing the arbitration clause is unconscionable under Georgia law and equitable factors weigh against arbitration. (Doc. 18, at 13-24; Doc. 37, at 6-12.)

### A. Unconscionability

Under the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA allows state law to invalidate an arbitration agreement through generally applicable contract defenses, such as

---

[2] The FAA "does not confer subject matter jurisdiction nor does it create independent federal question jurisdiction." Sunpoint Sec., Inc. v. Porta, 192 F.R.D. 716, 718 (M.D. Fla. 2000) (citing Baltin v. Alaron Trading Corp., 128 F.3d 1466, 1469 (11th Cir. 1997)). Therefore, "[i]ndependent grounds for subject matter jurisdiction must be demonstrated." Id.

6

fraud, duress, or unconscionability. Dale v. Comcast Corp., 498 F.3d 1216, 1219 (11th Cir. 2007). Thus, the Court must look to Georgia law regarding unconscionability.

The standard test for unconscionability under Georgia law is "whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract." Id. (citation omitted) (quoting NEC Techs., Inc. v. Nelson, 478 S.E.2d 769, 771 (Ga. 1996)). Plaintiff bears the burden of proving that the agreement to arbitrate is unconscionable. Sims v. Select Portfolio Servicing, Inc., No. 108-cv-064, 2008 WL 11349693, at *6 (S.D. Ga. Sep. 23, 2008) (citation omitted). In this case, Plaintiff alleges the arbitration provision is both procedurally and substantively unconscionable. (Doc. 37, at 7-10.) "Procedural unconscionability addresses the process of making a contract, while substantive unconscionability looks to the contractual terms themselves." NEC Techs., 478 S.E.2d at 771 (citation omitted). Under Georgia law, the burden of proving unconscionability is a stringent one. Sims, 2008 WL 11349693, at *6. The Georgia Court of Appeals described an unconscionable contract as one "abhorrent to good morals and conscience. It is one where one of the parties takes a fraudulent advantage of another," and "[i]t is an agreement that no sane person not acting under a delusion would make and

7

that no honest person would take advantage of." William J. Cooney, P.C. v. Rowland, 524 S.E.2d 730, 732 (Ga. Ct. App. 1999) (citations and quotation marks omitted).

1. Substantive Unconscionability

"As to the substantive element of unconscionability, courts have focused on matters such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of risks between the parties, and similar public policy concerns." Payne v. Savannah Coll. of Art and Design, Inc., 81 F.4th 1187, 1194 (11th Cir. 2023) (citing NEC Techs., 478 S.E.2d at 772).

Plaintiff asserts the arbitration provision is substantively unconscionable because it "is not commercially reasonable; allocates all the financial and liability risk to [CSRA]; has improper purpose and effect by encouraging fraudulent conduct and subverting federal rules, regulations, and guidance; and undermines public policy." (Doc. 37, at 7.) Plaintiff argues "[t]his contract of adhesion exploited the vulnerability and inexperience of small businesses like [CSRA]" and if enforced, would allow ERTC "to hide behind arbitration to cover its tracks . . . and take fraudulent advantage of the next unsuspecting small business." (Id.) Defendants argue "[t]he arbitration provision is bilateral, requires the arbitration to be submitted to the New York JAMS office and requires the agreement

8

to be governed by New York law." (Doc. 42, at 6.) They concede that arbitrators are expensive but that the arbitrator can control the location of the hearing and can permit remote appearances of witnesses. (Id. at 6-7.)

Turning to commercial reasonableness, Plaintiff states the arbitration clause is unreasonable because "[ERTC] took $500,000 from Plaintiff to do nothing more than pass on all responsibility to others, not concern itself with professional tax standards, and eschew any accountability, while [CSRA] had to agree to waive its right to a jury trial and arbitrate any and all its claims against [ERTC]." (Doc. 37, at 9 (emphasis omitted).) The Court is not convinced. CSRA entered into the agreement with ERTC for the purpose of obtaining ERC application services. As payment for receiving the credit amount, nearly $1,300,000.00, CSRA was required to give ERTC a contingency fee totaling around $514,000.00 for the work it completed. (Doc. 18, at 15; Doc. 42, at 5.) Per the agreement, these funds were pulled from the credit amount paid to CSRA by the IRS before the remaining funds were sent to CSRA. (Doc. 16-2, at 4.) This payment was not for "nothing more than [to] pass on all responsibility," and stating as such undermines the actual language and purpose of the agreement. (Doc. 37, at 9.)

Additionally, the binding arbitration provision applies equally to both Parties, so CSRA is not inherently assuming more

9

risk than ERTC by arbitrating.  (Doc. 16-2, at 8.)  Substantive unconscionability arguments generally do not arise with agreements between two moderately-sized businesses such as Plaintiff and ERTC, with the limited in-circuit caselaw typically involving class actions or individuals.  Cf. Dale, 498 F.3d at 1221; Payne, 81 F.4th at 1194; Caley, 428 F.3d at 1378.  The Parties cite Premier Petroleum, Inc. v. Heer, Inc. as an example of unconscionability of a contract between two businesses.  (Doc. 37, at 10; Doc. 42, at 7-8 (citing 899 S.E.2d 785, 792 (Ga. Ct. App. 2024)).)  In Heer, the Court of Appeals affirmed the trial court's findings that a contract was substantively unconscionable when: (1) only one Party was able to terminate the agreement without penalty; (2) there were poorly written price terms that were incomprehensible as written; (3) the agreement had an illegal damages provision; and (4) there were automatic term renewals and a written statement that no modifications of the term was permitted.  (Id. at 792-93.)  Further, one Party did not speak English sufficiently to read the contract.  (Id. at 793.)  None of these instances, nor anything like them, apply in this case. Rather, the arbitration provision involves a mutual promise to arbitrate "[a]ny dispute, controversy, or claim arising out of or related to this Agreement or any breach or termination of this Agreement," while "the prevailing party in such action is entitled to recovery its reasonable attorney's fees, costs and expenses

10

incurred in that matter from the non-prevailing party." (Doc. 16-2, at 8.)  This holds both Parties to the outcome of arbitration and awards the prevailing party applicable fees, regardless of party identity.  (Id.)

On the potential for fraudulent behavior and public policy concerns, it is not currently the Court's role to determine whether Defendants acted fraudulently under the signed agreement. Plaintiff asserts the arbitration provision "has improper purpose and effect by encouraging fraudulent conduct and subverting federal rules . . . and [it] undermines public policy." (Doc. 37, at 7.)  In reviewing the contract and arbitration provision as written, the Court does not agree.  Plaintiff makes assertions outside of the scope of determination on Defendants' motion, as a finding that the arbitration provision was "encouraging fraudulent conduct" would require the Court to imply that Defendants committed fraud or had the intent to commit fraud during the agreement with Plaintiff.  The Court cannot find that a business contract containing a mutual arbitration provision, without a showing of illegality or unjust terms, raises public policy issues.  The contract on its face does not appear to promote an improper purpose or effect.

11

Based on the foregoing, the Court finds Plaintiff fails to carry its burden of showing the arbitration provision is substantively unconscionable.[3]

2. Procedural Unconscionability

As to procedural unconscionability of the arbitration clause, Plaintiff argues it "never had a realistic opportunity to negotiate its terms; [ERTC] had far greater bargaining strength as a specialized tax consulting firm purporting to have mastered the ins and outs, risks, and rewards of the [ERC]; the agreement was presented on a 'take-it-or-leave-it' basis;" and "Plaintiff had no reasonable opportunity to understand the terms before entering into the contract." (Id. at 10 (citations omitted).) Defendants argue Plaintiff is not a small, unsophisticated business, and it had access to a separate accountant it could have relied on for advice on the matter. (Doc. 42, at 4-5.) Further, they argue "this is simply not a case where there were no other options for Plaintiff to choose in terms of ERC filers," and Plaintiff has not shown "evidence of anything other than its allegation that it responded positively to a cold call." (Id. at 5.)

---

[3] The Court may end its analysis here because both substantive and procedural unconscionability are required for a court to find a provision unconscionable. United States for use and benefit of Superior Steel, Inc. v. B.L. Harbert Int'l, LLC, No. 119-cv-173, 2020 WL 4227307, at *5 n.7 (S.D. Ga. July 23, 2020). However, the Court addresses Plaintiff's procedural unconscionability argument as well.

Factors used to determine procedural unconscionability include: "age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of meaningful choice." Payne, 81 F.4th at 1194 (citing NEC Techs., 478 S.E.2d at 772). Moreover, the fact that an arbitration provision requires both Parties to submit to arbitration strongly suggests that an agreement is not unconscionable. Sims, 2008 WL 11349693, at *6. As a result, "[a]n agreement in which the promises in the agreement are mutual is not unconscionable." Id. (citing Caley, 428 F.3d at 1377).

The Court is not convinced Plaintiff did not have a reasonable opportunity to understand the terms of the contract, given it is a moderately-sized business with the resources needed to get a second opinion or consult with a disinterested tax professional. Further, ERTC was not the only business providing ERC application services, nor was it a requirement for Plaintiff to use ERTC to prepare the application. The Court is not swayed by Plaintiff's argument that it received "[ERTC]'s adhesion contract, on a 'take-it-or-leave-it' basis with no alternative if it wished to obtain 'maximum' [ERC] with 'minimal' risk." (Doc. 18, at 21.) Plaintiff, an established business, entered into a contract for services with ERTC by choice. If, at that time, Plaintiff believed

13

the contract did not pass the smell test, it had ample opportunity to seek clarification from ERTC, consult a tax professional, or explore other ERC application service providers. Participation in the ERC program itself was optional, and while there was a deadline to participate, Plaintiff agreed to the terms as outlined in the contract with ERTC. Based on the above, the Court finds there was not a large discrepancy in bargaining power, nor business acumen and experience of the Parties.

Additionally, neither Party provides evidence that contract terms had been or were able to be negotiated. Plaintiff asserts the agreement was presented on a wholly "take-it-or-leave-it" basis, but Defendant addresses the 30% consulting fee agreement by demonstrating there were various options for payment available to Plaintiff. (Doc. 16-2, at 2-4; Doc. 18, at 21; Doc. 26, at 5.) The agreement provided Plaintiff with three options of how to pay ERTC based on the time of payment, either before or after the credit was received from the IRS. (Doc. 16-2, at 2-4.) The Court finds there is no evidence that Plaintiff lacked the ability to negotiate a particular contract provision if it so chose. (See Doc. 16, at 6.)

Lastly, under Georgia law, "[a]n unconscionable contract is such an agreement as no sane man not acting under a delusion would make and that no honest man would take advantage of." Hall v. Fruehauf Corp., 346 S.E.2d 582, 583 (Ga. Ct. App. 1986) (internal

14

quotation marks and citation omits).  The Parties' contract language, including the arbitration provision, is not found to offend this high standard, nor is it deemed oppressive.  The arbitration language applies mutually to both Parties and expressly states the types of claims available to arbitrate.  (Doc. 16-2, at 8.)  Based on the above, Plaintiff's challenge also fails because the provision is not procedurally unconscionable.

The Court finds the arbitration provision within the Parties' agreement was neither substantively nor procedurally unconscionable under Georgia law; thus, it is enforceable.  Given the provision is not unconscionable, and courts generally must "rigorously enforce agreements to arbitrate," the Court refrains from analyzing the Parties' arguments regarding the weight of equitable factors on arbitration.  Davis, 59 F.3d at 1192 (citation omitted).

**B. Status Pending Arbitration**

Defendants move the Court to not only compel arbitration, but also to dismiss the case.  (See Docs. 29, 33, 34.)  Section 3 of the FAA provides that once a district court is "satisfied that the issue[s] involved in [a] suit . . . [are] referable to arbitration," the district court "shall on application of one of the parties stay the trial of the action" until the arbitration is complete.  9 U.S.C. § 3.  Given Defendants' motion to compel arbitration and stay is granted, all proceedings in this case are

15

stayed pending arbitration.  As such, the Court refrains from analyzing Defendants' motions to dismiss at this time.

### IV. CONCLUSION

For the foregoing reasons, ERTC's first motion to dismiss (Doc. 5) is **DENIED AS MOOT,** ERTC's motion to compel arbitration and stay (Doc. 6) is **DENIED AS MOOT,** and Defendants' motion to compel arbitration and stay (Doc. 33) is **GRANTED.   IT IS HEREBY ORDERED** that (1) the Parties **SHALL ARBITRATE** all Counts of the amended complaint; and (2) this entire case is **STAYED** pending arbitration.  The Parties **SHALL** file a joint status report with the Court every **NINETY (90) DAYS** until the arbitration has concluded.

**ORDER ENTERED** at Augusta, Georgia, this ___6th___ day of March, 2026.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

16